IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JAMES HANSEN, ) | |
| ) | |
| Plaintiff, ) | Case No. 15 C 0077 |
| v. ) | |
| ) | Judge Robert W. Gettleman |
| TTX COMPANY, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff James Hansen has brought a four count complaint against his former employer defendant TTX Company alleging disability discrimination and failure to accommodate in violation of the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq. (Counts I and II), violations of the Family Medical Leave Act, 29 U.S.C. § 2601 et seq. (Count III) and violation of the Employment and Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA") (Count IV). Defendant has moved for summary judgment on all counts. For the reasons discussed below, the motion is granted.

**FACTS**

Defendant TTX provides railcars and related freight car management and repair services to the North American rail industry. Burlington Northern Sante Fe ("BNSF") contracts with defendant for defendant to perform maintenance work at BNSF's rail yards.

Plaintiff worked as a maintenance specialist for defendant from December 1994 until his termination on July 9, 2014. He was a member of the Brotherhood of Railway Carmen Division of the Transportation Communications International Union, Local 6011 (the "Union"), which is a party to a collective bargaining agreement ("CBA") with defendant.

Plaintiff has suffered from end-stage renal disease for approximately 15 years. The disease requires him to receive dialysis three times per week. Throughout his employment with defendant, plaintiff was approved for and had taken intermittent leave, including intermittent FMLA leave, to deal with medical issues. Plaintiff had informed defendant's human resource office about his condition and was able to go to dialysis whenever he needed. Defendant granted plaintiff medical leave whenever he needed it over the course of his employment. After receiving treatment, plaintiff would return to work.

On June 3, 2014, plaintiff was driving to work at BNSF's Willow Springs location. As his minivan approached the cross-street leading to the BNSF entrance gate, he sped past a black vehicle driven by Richard Sylvester, an employee of another BNSF contractor, by passing in the left turn lane, then driving through a stop sign, returning to the right lane, cutting off Sylvester and abruptly stopping at the mouth of the entryway into the employee entrance gate. Sylvester then drove around plaintiff's vehicle and stopped several feet ahead. As Sylvester began to get out of his car and walk toward plaintiff's minivan, another vehicle turned into the entryway and stopped between the minivan and Sylvester's car. Another vehicle then pulled up directly behind plaintiff.

Sylvester walked up to plaintiff's vehicle and pointed at it. Sylvester then walked backed to his own car, and plaintiff quickly exited his minivan. Sylvester turned around as plaintiff approached him. The two said something to each other and then plaintiff violently shoved Sylvester with both arms, causing Sylvester to lose balance and fall backwards a few steps, almost falling down. Sylvester did not have any physical contact with plaintiff either before or after the shove.

2

Sylvester then began walking back to his vehicle. Plaintiff stayed outside his minivan. Sylvester turned and pointed at plaintiff but then turned back and continued walking toward his car. Just as Sylvester reached his car, plaintiff said something to him and gestured towards Sylvester, causing Sylvester to turn and point at plaintiff. The two then began approaching each other again. At that point, Sylvester pointed at the car between his and plaintiff's minivan. Sylvester then turned and walked back to his car. Plaintiff followed, gesturing toward Sylvester as Sylvester entered his car and drove through the employee entrance gate. Plaintiff then went back to his minivan. The car that had stopped between them followed Sylvester through the employee entrance. Plaintiff gestured for the car behind him to go around, which it did. Plaintiff then got into his vehicle and proceeded through the entrance gate. The whole incident took approximately 1 minute and 25 seconds. The entire incident, from the time plaintiff first speed past Sylvester's car until plaintiff drove through the employee gate was captured on surveillance video.

Plaintiff called 911 to report the incident and ultimately spoke with a BNSF agent investigating the incident. Plaintiff told the agent that he had called the police because he had been pushed by Sylvester during an altercation outside of the employee entrance gate. Sylvester had approached his vehicle and began to yell and, therefore, plaintiff had exited his vehicle to protect himself; that after a verbal exchange, Sylvester pushed plaintiff; and that he (plaintiff) never put his hands on Sylvester. The BNSF agent documented all of this information in a typed report.

Plaintiff also submitted an "Employee Statement of Incident Report" to defendant. In that report, plaintiff wrote, "I was attempting to enter the rail yard when a black dodge sped past

me blocking the entrance to the yard. The driver then aggressively approached my vehicle and started yellig [sic] at me. He then bumped chests with me."

On June 14, 2014, defendant sent plaintiff a formal Hearing Notice that plaintiff was accused of violating the CBA's prohibition against physical violence (Addendum A, § 1, item 5) and falsification of reports (Addendum A, § 1, item 3), both of which are listed as violations that support immediate termination. Plaintiff was told he was suspended without pay pending results of the hearing. Plaintiff attended the hearing on June 20, 2014, accompanied by his Union representative.

At the hearing plaintiff was shown the video of the incident. Despite seeing the video, plaintiff continued to claim that Sylvester pushed him, that he did not submit false information, and that the video did not contradict his version of the events. At the hearing, plaintiff claimed that Sylvester threatened to kill him and that he (plaintiff) had a catheter hanging out of his aorta for dialysis which had been exposed on the left side of his body. Plaintiff claims that Sylvester made a punching gesture toward him and that plaintiff was acting in self defense to protect his catheter. Plaintiff continued to claim that Sylvester may have bumped his chest and that "he [plaintiff] knew he got hit."

Afer the hearing, Brian Powers, defendant's Vice-President of Human Resource and Labor, and Pete Smith (the Zone Manager) reviewed the transcript and evidence presented at the hearing, including the surveillance video tape, and determined that plaintiff had violated both provisions of the CBA.

Plaintiff's employment was terminated on July 9, 2014. He appealed that decision pursuant to the CBA, but the appeal was denied.

4

**DISCUSSION**

Defendant has moved for summary judgment on all counts. A movant is entitled to summary judgment when the moving papers and affidavits show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once the moving party has met its burden, the non-moving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum-Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and generally draws all reasonable inferences in the light most favorable to the non-moving party. Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The non-moving party must, however, "do more than simply show there is some metaphysical doubt about the material facts." Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 575, 586 (1986). "The mere existence of scintilla of evidence in support of the [non-moving party's] position would be insufficient, there must be some evidence on which the jury could reasonably find for the [non-moving party]." Anderson, 477 U.S. at 252. Additionally, when the evidence includes a video tape of the relevant events, the court should not adopt the non-moving party's version of the events when that version is blatantly contradicted by the video tape. Scott v. Harris, 550 U.S. 372, 379-80 (2007). In the instant case, the parties have submitted a video tape of the entire incident. It is undisputed that the tape gives an accurate account of the incident. Thus, the court relies primarily on the video to determine

exactly what happened.  Williams v. Brooks, 809 F.3d 936, 942 (7th Cir. 2016).  As plaintiff points out, however, the video tape does not include sound and thus sheds no light on any verbal exchange between Sylvester and him.

In Count I, plaintiff claims that he was terminated in violation of the ADA.  A plaintiff claiming disparate treatment in violation of the ADA can rely on either the direct or indirect method of proof to survive a motion for summary judgment.  Bunn v. Khoury Enterprises, Inc., 753 F.3d 676, 683 (7th Cir. 2014).  Although unclear from plaintiff's brief, it appears that he relies only on the direct method.  Under this method, plaintiff must show that a genuine issue of material fact exists with respect to each of the three elements he must eventually prove at trial: (1) that he has a disability within the meaning of the ADA; (2) that he is qualified to perform the essential functions of the job with or without reasonable accommodation; and (3) that he has suffered an adverse employment action because of his disability.  Id.

Defendant does not dispute the first two elements.  In fact, it has been accommodating plaintiff's need for treatment for over ten years.  Instead, defendant argues that plaintiff cannot show a question of fact as to the third element, that he was fired because of his disability.  The court agrees.

Plaintiff may rely on either direct or circumstantial evidence to tie the alleged adverse action to a discriminatory animus.  Id. at 683-84.  Direct evidence, such as an admission of discriminatory intent by the relevant decisionmaker, is generally rare in ADA cases.  Id. at 684.  Thus, most ADA plaintiffs rely on circumstantial evidence such as (id.):

> (1) suspicious timing; (2) ambiguous statements or behavior toward other employees in the protected group; (3) evidence, statistical or otherwise, that similarly situated employees outside of the protected group systematically

received better treatment; and (4) evidence that the employer offered a pretextual reason for the adverse employment action.

Plaintiff relies on circumstantial evidence, attempting to establish that defendant's purported reasons for terminating him – that he engaged in physical violence and then submitted false reports about his use of that violence, is pretextual. His circumstantial evidence, however, is insufficient to create a genuine issue of fact.

First, it is undisputed that plaintiff shoved Sylvester, that Sylvester never touched plaintiff, and that plaintiff's use of physical violence is a listed activity under the CBA that can subject an employee to immediate dismissal. Next, it is undisputed that plaintiff submitted an incident report that falsely indicated that Sylvester bumped chests with him, and that submitting a false report is also grounds for immediate termination under the CBA. Plaintiff also told the BNSF agent that Sylvester pushed him and that he had never put his hands on Sylvester.

Plaintiff now seeks to excuse his actions by arguing that he was in fear of his life and that he was simply acting to protect a newly installed catheter. He argues that Powers and Smith failed to consider his medical disability, his requests to consider his medical condition, whether he was the aggressor or victim, whether he was on medication during the incident and that he had never been involved in physical violence before and had never before falsified a report. These arguments, however, at most suggests reasons why defendant could have exercised some discretion and excused plaintiff's blatant violation of the rules, rather than suggest that defendant discriminated against him.

In particular, plaintiff seeks to explain his falsification of the report by arguing that he was shaken by the life threatening experience and that he was in an impaired condition because of his disability and medication. He has presented no evidence, however, to support this

7

argument. First, he was under no medical restrictions. He claims he was on medication that impaired his ability, but offers no evidence to support that claim. He has not, for example, provided the names of any medication he was taking or, more importantly, the effects of such medication.

Nor has plaintiff submitted any evidence that his medical condition "caused" plaintiff to violently shove Sylvester and then lie about it. And, even if he had such evidence, it would provide him no help. The Seventh Circuit has drawn a distinction between an employee's disability and work place misconduct resulting from that disability. "[A]n employee's disability will not preclude an employer from imposing discipline, up to and including discharge, for the employee's violation of a work place rule, even when there is a connection between the disability and the violation." Tate v. Ancell, 551 Fed. App'x 877, 885 (7th Cir. 2013). Plaintiff's reliance on Spurling v. C&M Fine Pack, Inc., 739 F.3d 1055 (7th Cir. 2014), in this regard is misplaced. The issue in Spurling was the timing of the plaintiff's termination and, whether the defendant had been informed of the plaintiff's disability prior to her discharge. Id. at 1061. Having determined that the defendant was aware of the plaintiff's disability, the court held that it should have engaged in an interactive process to find a reasonable accommodation. Id. Nothing in Spurling suggests, however, that a company must excuse a violation of work place rules simply because it is aware of the plaintiff's disability, even if that disability caused a violation of the rule. Indeed, Tate, which was issued four days after Spurling, noted the Spurling decision but reiterated the Seventh Circuit's position on violation of work place rules. Tate, 551 Fed. App'x at 885-86. In essence, plaintiff asked the court to "extend the ADA so as to prevent an employee who lies, just because the lying is allegedly connected to a disability. We are of the

8

opinion that the ADA does not require this." Spath v. Hayes Wheels Int'l - Ind., Inc., 211 F.3d 392, 395 n. 5 (7th Cir. 2000). In any event, as noted above, plaintiff has failed to present any evidence that his disability caused him to shove Sylvester and then subsequently lie about doing so. In short, plaintiff has presented no evidence to suggest that defendant's decision to terminate him was in any way based on his disability. Consequently, defendant's motion for summary judgment on Count I, plaintiff's disparate treatment claim, is granted.

In Count II, plaintiff alleges that defendant failed to reasonably accommodate his disability, arguing that he pointed out his condition during his disciplinary hearing. This argument suffers from the same deficiency as his disparate treatment claim. Plaintiff's after-the-fact request for an accommodation did not preclude defendant from disciplining him for the incident in question. As Tate makes clear, the request might have imposed an obligation on defendant going forward to explore the possibility that some accommodation would have helped plaintiff from lying or becoming violent in the future, as held in Spurling, 739 F.2d at 1062. But as in Tate, prior to the incident, plaintiff had never requested such an accommodation. Having failed to do so, he cannot complain of discipline authorized by the CBA. Tate, 551 Fed. App'x at 886. In short, plaintiff has not shown that defendant breached any duty to accommodate him prior to the incident, and the request made during the hearing did not compel defendant to ignore the rules infraction he had already committed. Id. Consequently, defendant's motion for summary judgment on plaintiff's failure to accommodate claim (Count II) is granted.

Finally, defendant has also moved for summary judgment on plaintiff's FMLA and ERISA claims. Plaintiff has not responded to defendant's arguments, except to state that the motion on these claims should be denied for the same reasons as to the previous counts,

"including the pretextual nature" of the termination. Because the court has rejected this argument, and because there is no evidence that defendant denied plaintiff FMLA leave or terminated him to avoid ERISA benefits, the motion for summary judgment on Counts III and IV is also granted.

## **CONCLUSION**

For the reasons described above, defendant's motion for summary judgment (Doc. 31) is granted.

**ENTER:**     **June 6, 2016**

                                           **Robert W. Gettleman**
                                           **United States District Judge**